# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GERALD RHODES,<br><br>Plaintiff,<br><br>v.<br><br>LEYDEN HIGH SCHOOL DISTRICT 212,<br><br>Defendant. | No. 13 CV 1774<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gerald Rhodes ("Plaintiff") filed this action against Defendant Leyden High School District 212 ("Defendant") on August 6, 2013, alleging that Defendant violated Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 by discriminating against Plaintiff based on his color. This matter is presently before the court on Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendant's motion is granted.

## BACKGROUND

Plaintiff is a resident of Illinois and former employee of Defendant who began working as a school bus driver in September 2005. Plaintiff transported students to and from school at the beginning and end of the school day and to and from extra-curricular events. During his employment with Defendant, Plaintiff had three accidents. The first accident was on October 26, 2005 when he cut a turn too short in the back parking lot of the East Campus and damaged a parked car. The second one was on September 15, 2006 when he hit a gate opening of the East Campus parking lot and damaged the gate and the bus that he was driving.

The final accident, which led to his dismissal, occurred on May 30, 2008. He hit a light

pole, when there was no car parked next to or near the light pole, while driving an empty school bus into a school parking lot at West Leyden. The pole fell on top of the bus and totaled the bus. Plaintiff sustained minor injuries on his knees and legs but was transported to the emergency room because of his high blood glucose level, which was 468 milligrams per deciliters (mg/dL) at the time of accident, according to paramedics who reported to the scene. Plaintiff visited his doctor, Robert Alter, after the accident on June 2 and 6, 2008. Alter recorded that Plaintiff's blood glucose levels at the time of accident (468 mg/dL) and at the June 6 appointment (357 mg/dL) were both high for Plaintiff compared to his normal level of 110 mg/dL, and diagnosed Plaintiff with uncontrollable diabetes. Alter prescribed daily insulin for Plaintiff, and this was the first time that Plaintiff took insulin for diabetes.

      A few months later, on August 1, 2008, Plaintiff's manager at District 212, Sue Czarnecki, sent him a letter regarding the May 30, 2008 incident. The letter discussed the severity of the accident, the damage it had done to the bus, and Plaintiff's history of accidents. Specifically, the letter expressed Defendant's concern as to Plaintiff's ability to drive in the future "due to questions that have arisen regarding [his] health and the number of accidents [he] had since coming to the district." Defendant required Plaintiff to be examined by a district appointed doctor, Scott Kale, who would evaluate Plaintiff's fitness to perform his job duties. Kale examined Plaintiff on August 12, 2008. Plaintiff maintains that Kale told him that there was nothing wrong with him and that he will sign the paper to send him back to work. Kale, however, issued a seemingly contrasting opinion letter on August 13, 2008, concluding that (a) Plaintiff has insulin-dependent diabetes, (b) the May 30, 2008 accident was an episode of "what appears to be losing consciousness" or "a probable blackout," and (c) Defendant should not reinstate him as a bus driver due to concerns that Plaintiff's health status may impact his ability to drive

students safely. Plaintiff disagreed with Kale's assessment and asserted that (a) he did not lose consciousness when the accident occurred and (b) he did not have a history of insulin-dependent diabetes since he was never prescribed insulin for his diabetes prior to the May 30, 2008 accident.

Defendant maintains that Plaintiff, Czarnecki, and District 212 superintendent Kathryn Robbins had a pre-disciplinary hearing on September 17, 2008. They discussed Robbins's recommendation to terminate Plaintiff based on the seriousness of the May 30, 2008 accident, *i.e.*, totaling the bus, and Kale's determination that Plaintiff's medical condition rendered him unable to safely perform his duty as a school bus driver. They also informed Plaintiff that he has the right to appear before the Board to respond to Robbins' dismissal recommendation at the board meeting scheduled on September 25, 2008. Despite Plaintiff's plea at the meeting, however, the board decided to terminate him based on his inability to perform his job duties. Plaintiff did not recall the pre-disciplinary hearing but acknowledged that he was informed of his right to appear at the board meeting and that he did so.

Plaintiff also testified that, at some point during his dismissal-related conversations with Czarnecki, he expressed his interest in applying for other positions in District 212 and that Czarnecki told him he could do so for the positions for which he was qualified. Plaintiff asked if he could work as a bus monitor or a bus attendant, or take a position in a similar wage range as that of a bus driver, but there were no openings for such positions. Parties dispute whether Plaintiff made such requests before or after his dismissal, but they agree that (a) he expressed interest in taking other positions but was unsuccessful because there were no openings and (b) he turned down a once-a-week night watchman position, the only position that Defendant could offer, due to its low pay and lack of hours.

Plaintiff filed discrimination charges based on race and disability with the Equal

3

Employment Opportunity Commission on November 7, 2008 and received notice of his right to bring an action against Defendant on April 12, 2012. Plaintiff, however, did not allege the disability claim in his Complaint.[1] He submitted a list of five white employees at District 212 who were still employed despite their history of accidents, though he did not show whether they had any medical problem or incurred accidents of similar severity. Finally, according to Plaintiff, his co-workers made comments about how Plaintiff should not be allowed in Defendant's premises due to the May 30, 2008 accident, threatened him, and blocked him from entering the premises. Plaintiff, however, also acknowledged that they did not make any comments based on his color or disability and that no one from District 212 told him that he was losing his job due to his diabetes.

## LEGAL STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 503 (7th Cir. 2010)(citing Fed. R. Civ. P. 56(c)(2)). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To move for summary judgment, a movant must identify parts of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavit "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It may meet the initial burden by "pointing out" that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 325. Then, a nonmoving party must show evidence "that would convince a trier of fact to

---

[1] While Plaintiff has argued during his deposition that Defendant discriminated against him based on his disability (*i.e.* diabetes) and failed to provide a reasonable accommodation of a bus attendant position, Plaintiff did not allege a disability discrimination claim in his Complaint or amend his Complaint to include such a claim.

4

accept its version of events" and must provide more than a "mere existence of a scintilla of evidence" to sufficiently support its position. *Anderson*, 477 U.S.at 252; *see Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004). In determining whether summary judgment is appropriate, the court should construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S.at 255; *see also Carter v. City of Milwaukee*, 743 F.3d 540, 543 (7th Cir. 2014).

When responding to a motion for summary judgment, a nonmoving party "may not rest upon the mere allegations or denials of its pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014). In fact, the nonmoving party's failure to respond to the motion may render its case to a summary judgment. Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322; *Othman v. City of Chicago*, No. 11 C 05777, 2014 WL 6566357, at *4 (N.D. Ill. Nov. 20, 2014). Furthermore, Local Rule 7.1(c)(1) requires a nonmoving party to file a response within 30 days after service of the summary judgment motion. Pursuant to Local Rule 7.1(c)(2), " [f]ailure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion."

## DISCUSSION

Plaintiff is a pro se litigant, and I consider his color discrimination claim based on the record filed before the court. Under Title VII, employers may not "discriminate against any individual with respect to his . . . privileges of employment, because of such individual's race

5

[or] color." *Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 442 (7th Cir. 2014) (citing 42 U.S.C. § 2000e-2(a)(1)). A plaintiff may establish employer's discrimination based on his color or race, *i.e.*, employer's disparate treatment, either directly or indirectly. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). To prove discrimination directly, the plaintiff must present sufficient direct or circumstantial evidence demonstrating that "the employer's animus motivated an adverse employment action." *Id.* Here, Plaintiff has not provided any direct evidence showing that Defendant had animus towards him or that such animus played a role in its decision to terminate him. To the contrary, Plaintiff testified that Defendant's employees, including Czarnecki, Robbins, and his co-workers, had not stated anything indicating or inferring that his race or color was a factor in his dismissal.

Plaintiff also fails to establish a claim under the indirect method. To prove discrimination indirectly, a plaintiff may offer circumstantial evidence to establish a prima facie case under the *McDonnell Douglas* burden-shifting framework. *Id*. The framework requires the plaintiff to meet the initial burden of establishing a prima facie case by showing that: (a) he is a member of a protected class, (b) his job performance met [the employer's] legitimate expectations, (c) he suffered an adverse employment action, and (d) another similarly situated individual not in the protected class was treated more favorably than him. *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)). If the plaintiff establishes a prima facie case, the burden shifts to the employer-defendant to provide a legitimate, nondiscriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802; *Burks v. Wisconsin Dep't of Transportation*, 464 F.3d 744, 751 (7th Cir. 2006). If the employer offers a legitimate reason, the plaintiff must then show that the defendant's reason is "a 'pretext,' which in turn permits an inference of unlawful

6

discrimination." *McDonnell Douglas*, 411 U.S. at 804; *Coleman*, 667 F.3d at 845. It is undisputed that Plaintiff is a member of a protected class who suffered an adverse employment action. Plaintiff, however, failed to establish a prima facie case because he did not provide any evidence establishing that (a) his job performance met Defendant's legitimate expectations or (b) there was a similarly situated employee in a non-protected class who is still employed by Defendant.

To determine whether an employee had been meeting an employer's legitimate employment expectations, courts consider whether the employee was performing adequately at the time of the adverse employment action. *E.E.O.C. v. Aurora Health Care Inc.*, 933 F. Supp. 2d 1079, 1103 (E.D. Wis. 2013), *appeal dismissed* (Mar. 20, 2014). When determining this issue, courts must examine the employee's job performance through the eyes of his supervisors at the time of his termination. *Id*. (citing *Gates v. Caterpillar, Inc.,* 513 F.3d 680, 689 (7th Cir.2008)). While the employer's expectations must be legitimate and not a mere cover for discrimination, it is acceptable for the employer to set unreasonable standards and fire employees who do not meet them if it chooses to do so. *Castello v. Delta Air Lines, Inc.*, No. 94 C 4444, 1996 WL 563544, at *3 (N.D. Ill. Oct. 1, 1996)(citing *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1571 (7th Cir.1989)).

Defendant terminated Plaintiff from his employment as a bus driver after determining that Plaintiff was unable to perform the task of safely driving a school bus, a task essential to Plaintiff's employment. Defendant based its decision that Plaintiff was unable to meet its employment expectations based on (a) Plaintiff's history of incurring two accidents prior to the final accident in 2008, (b) the severity of the May 30, 2008 accident, and (c) Kale's diagnosis of Plaintiff's insulin-dependent diabetes and recommendation against reinstating him as a school

7

bus driver. Such evidence adequately supports that Defendant's decision to terminate Plaintiff was based on concerns with his inability to safely perform the essential duties of a bus driver and ensure students' safety.

Plaintiff asserts that the diagnosis that Kale gave him in person during the medical examination on August 12, 2008 was drastically different from Kale's opinion in the letter to Defendant, but he did not offer any evidence to prove his assertion. Similarly, he provided no evidence showing that he did not lose consciousness when he got into the accident on May 30, 2008 or that something else caused the occurrence of the accident. In any case, Defendant did not solely rely on Kale's diagnosis, but also considered Plaintiff's accident history and severity of the final accident in determining that Plaintiff was not meeting its employment expectations. Defendant's employment expectations were legitimate and its decision to terminate Plaintiff was out of concern for students' safety, not a cover for discrimination.

Plaintiff also did not provide sufficient evidence to show that there was another similarly situated employee, *i.e.*, an employee with a similar medical problem and accident history, who sustained his employment. An employee-plaintiff need not show that his comparator is identical to him in every conceivable way, *e.g.*, the comparator having the same supervisors, the same job duties, the same work performance histories, and same bad conduct, as long as the distinctions between the plaintiff and his comparator are not 'so significant' that they render the comparison effectively useless. *Coleman*, 667 F.3d at 846; *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) *aff'd*, 553 U.S. 442, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008). It is sufficient for a plaintiff to show that his comparator and he "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct or the employer's treatment of them." *Humphries*, 474 F.3d at 405.

Here, Plaintiff identified four white employees who incurred more than two accidents and one white employee who incurred one accident, but did not provide any details regarding their medical history, *e.g.*, diabetes or other similar health problems, or any information about their accidents, *e.g.*, seriousness and causes of the accidents. Plaintiff has not provided sufficient evidence that the white employees were engaged in similar accidents such that they are similarly situated employees. The lack of information would render a reasonable trier of fact unable to compare whether Plaintiff and the identified employees were similarly situated but treated differently. Since Plaintiff did not offer sufficient evidence to establish a prima facie case under the *McDonnell Douglas* framework, the burden does not shift to Defendant to show that it had a legitimate, nondiscriminatory reason for dismissing Plaintiff.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: March 19, 2015